**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| ROBERT CLARKE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Civil No.: |
| | )   3:10cv238 |
| REGENT ASSET MANAGEMENT SOLUTIONS, INC., ET ALS. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION**
**FOR ENTRY OF JUDGMENT BY DEFAULT**

COMES NOW the Plaintiff, by counsel, as and for his Memorandum in Support of His

Motion for Entry of Judgment by Default, he states as follows:

**SERVICE OF PROCESS**

After initially filing this case in state court, interacting with the Defendants' national

counsel (Spencer, Fane, Britt & Browne of Kansas City, Missouri) and local counsel (Kaufman

and Canoles), and failing to settle the case, the Plaintiff nonsuited his state court case.  The

Kaufman and Canoles attorney then informed Plaintiff's counsel that he had withdrawn from his

representation of the Defendants due to "unforeseen circumstances".  The Defendants' national

counsel stopped responding to Plaintiff's counsel's emails altogether.  Thereafter, and with prior

notice to both the Spencer and Kaufman firms, Plaintiff filed this Complaint on April 13, 2010.

On April 19, 2010, the Summons and Complaint were served on Defendant Regent Asset

Management Solutions, Inc. (hereafter, "Regent") via a private process server, and the executed

Summons with regard to Regent was filed with the Court on April 28, 2010.  On April 22, 2010

the Summons and Complaint were served on Defendant D. Scott Carruthers and Associates, LLC

(hereafter, "Carruthers") also via a private process server, and the executed Summons with
regard to Carruthers was filed with the Court on June 22, 2010.

As of the filing of this motion and despite actual notice of this lawsuit literally months
ago from numerous sources including the Plaintiff himself, neither Defendant has filed a
responsive pleading or otherwise filed an answer to the Complaint.  Defendant Regent's time
within which to answer or file a responsive pleading expired on May 10, 2010.  Defendant
Carruthers' time within which to answer or file a responsive pleading expired on May 13, 2010.
The Clerk of this Court has accordingly now properly noticed the default of both Defendants.  At
this juncture, and despite prior notice on multiple occasions that this case was being refiled in
federal court, after valid service of process and verbal notice of this litigation from the Plaintiff
personally during several of the many collection calls that continued even after the filing and
service of this case, the Defendants have refused to respond or appear.  It is now appropriate that
this Court enter judgment against the Defendants by default.

## ARGUMENT

Plaintiff has brought claims against both Defendants pursuant to the FDCPA.  He has
brought an additional claim against Defendant Regent's agent, Carruthers and Associates LLC, a
California firm, pursuant to the California Rosenthal Fair Debt Collection Act.  By virtue of the
default of the Defendants, the properly pled allegations in the Complaint are now taken as
confessed.

In his Complaint, Plaintiff alleges that money was withdrawn electronically from his
Bank of America checking account without his consent. (Compl. ¶¶ 6-7).  By the operation of 15
U.S.C. §1693g, Plaintiff was not responsible for the amount that was taken without his consent,
and certainly not for the fees that Bank of America assessed against the account.  Plaintiff

attempted unsuccessfully to resolve this dispute with Bank of America.  Thereafter, Bank of

America sold the account to a debt collector, and eventually, after the account had changed

hands several times, Defendant Regent purchased the account.  (Compl. ¶¶ 10-11).  Despite

Plaintiff's clear and unambiguous instruction that he had not defaulted on his Bank of America

account, the Defendants persisted in attempting to collect not only the alleged deficiency balance

on the checking account, but also various additional amounts of money, not authorized by

contract, that from one letter to another, they interchangeably categorized as "collection fees,"

"interest," and "attorney fees."  (Compl. ¶ 24).  On multiple occasions, Defendant Regent placed

collection calls to the Plaintiff regarding the debt.   These calls were displayed as "Unknown

caller" on Plaintiff's Caller ID as a result of the Defendant's electronic "masking" of its caller

identification information in its effort to increase the likelihood that Plaintiff would answer the

call. (Compl. ¶ 11).

Plaintiff also received dunning letters that threatened the filing and service of legal action

against him in the Commonwealth of Virginia. (Compl. ¶ 16).  However, Defendant Carruthers

had neither the ability to prosecute such an action against the Plaintiff nor the intent to do so.

Defendants' collection letters further claimed that Plaintiff owed different account balances,

which varied from letter to letter and arbitrarily imposed charges on the Plaintiff that were not

provided for by contract. (Compl. ¶ 17).  Upon information and belief, Regent paid money to

Carruthers, and in exchange, Carruthers allowed Regent to use his letterhead for the purpose of

collecting debts by threatening litigation that Carruthers had no intent or ability to prosecute and

regarding matters of which Carruthers had no knowledge.  (Compl. ¶¶ 20-23).  According to the

research conducted by Plaintiff's counsel, neither Regent, nor Carruthers on behalf of Regent,

has ever filed a lawsuit in Virginia.

Notwithstanding the pendency of this or the prior state court litigation, the Defendants have continued their pattern of behavior with regard to the Plaintiff, undaunted, and despite their knowledge that present counsel represents him.  For example, on May 3, an employee of Defendant Regent contacted the Plaintiff by telephone and (again) threatened that if Plaintiff failed to respond, the collector would be forced to forward his file for litigation.  On May 24, an employee of Defendant Regent who identified herself as "Amy" contacted Plaintiff on his cellular phone and made similar threats, despite his warning to her that he was represented by counsel and had filed the present action against her employer.  Plaintiff received further communication from the Defendant from an employee who identified himself as John Brady who demanded that the Plaintiff return his call "before [Brady] made a decision" on Plaintiff's file on May 27.  To this day, even through the end of July 2010, Plaintiff continues to receive calls from the Defendant's auto-dialer on his cellular phone in its effort to collect this non-existent debt from him.  (Clarke Dec. ¶ 6). With each call, the Plaintiff continues to warn the Defendants that he is represented by counsel, and that this litigation is pending.

Plaintiff also testifies through his declaration, attached hereto as Exhibit A, that he has suffered significant damages as a result of the Defendants' violations of the law, including its multiple harassing telephone calls and dunning letters threatening the initiation of legal action against him.  The stress of dealing with Defendant Regent's continuous automated calls to his personal cell phone and the threats made against the Plaintiff when he has answered these calls are the proximate cause of the significant damage that Plaintiff continues to suffer to this day.

The Defendants' apathy towards the rights afforded to the Plaintiff by federal and state statutes mirrors its apathy towards to this litigation.  Plaintiff has experienced a significant impact on his daily life as a result of the calls, letters and false threats of litigation over the past

nine month, resulting in headaches, as well as stomach pain.  (Compl. ¶ 7, Clarke Dec. ¶ 7).  The

Plaintiff has suffered harm in both his personal and professional life and the harm that he

suffered is the direct result of the Defendants' business decision to attempt to extort money from

him that it was aware that he does not owe.   (Clarke Dec. ¶¶ 8-9).

**A.     PLAINTIFF IS ENTITLED TO AN AWARD OF COMPENSATORY DAMAGES THAT WERE PROXIMATELY CAUSED AS A RESULT OF DEFENDANTS' VIOLATIONS OF THE LAW.**

The most difficult issue for the Court will likely be the determination of damages to be

awarded in this case.  While Plaintiff has certainly suffered both economic and non-economic

harm from the Defendants' violations of the law throughout this process, it is more difficult for

any finder of fact to place a value on those categories of damages that do not immediately lend

themselves to pure mathematical calculation.

Plaintiff submits that the calculation of the component of sufficient compensatory

damages should include recovery for the disruption to Plaintiff's life (which continues to this

day, and will likely continue even after the entry of judgment), and the time that he spent

attempting to mitigate the harm caused by the Defendants' actions, false representations, and

threats.  Plaintiff has described these damages as specifically as possible in his Declaration, but

as in every case in which damages are not liquidated, the Court will need to determine a

reasonable amount to award as compensatory damages.

Plaintiff has been dealing with the collection efforts directed at him by the Defendants

since December of 2009.  For nine months, Plaintiff has been repeatedly threatened with

litigation, an "investigation of his employment, banking information and assets," and the

imposition of additional interest, court costs, and attorney's fees if he did not accede to

Defendants' demands.  Plaintiff has always responsibly paid his bills, has a pristine credit report,

and has been justifiably concerned that his outstanding credit score would be significantly

diminished if the Defendants followed through with their threat to initiate litigation against him.

At best, he would be in for a costly defense battle to establish that he did not owe this debt.  On

the other hand, if his defense was unsuccessful, the entry of judgment against him would

devastate his credit score and financial standing.

**B.      JURY VERDICTS IN SIMILAR CIVIL ACTIONS SUPPORT PLAINTIFF'S REQUEST FOR AN AWARD OF COMPENSATORY DAMAGES.**

Given that it is Plaintiff's burden to demonstrate the extent of his damages incurred

during the nine-month period during which he has endured the Defendant's numerous threatening

phone calls and letters, and in that emotional distress damage claims are inherently subjective,

Plaintiff suggests that jury verdicts in other cases involving similar violations of the Fair Debt

Collection Practices Act and the California statute are instructive.  The Fourth Circuit has

adopted a similar approach when analyzing the propriety of an emotional distress damages award

in a case brought pursuant to an analogous statute - the Fair Credit Reporting Act.  *See,* e.g.,

*Sloane v. Equifax Information Services, LLC,* 510 F.3d 495, 505 (4th Cir.  2007) (surveying

approved awards in other FCRA cases nationally as a basis for concluding that an appropriate

range for emotional distress damages in the context of an FCRA claim falls within $20,000 and

$75,000).

In the Central District of California, a jury awarded $40,000 actual damages under the

FDCPA to a consumer who alleged that "she suffered emotional distress manifested by crying,

vomiting, worry, concern, upset, sleeplessness, helplessness, etc." *Pedro v. National Revenue

Corp.,* 02-4797, U.S. District Court, Central District of California (Western Division), May 8,

2003, Verdict Search, Vol. 3, Issue 8, February 23, 2004.

In the Southern District of California, the Court awarded $50,000 actual damages under

6

the FDCPA, in a default judgment posture.  In affixing the amount, the Court relied on Plaintiff's

declaration, which stated, in relevant part:

> JVE and Mr. Fisher's actions have caused me to suffer severe emotional distress in the form of headaches, stomach aches, loss of concentration, loss of sleep, increase in appetite, crying fits, anger, fear, panic, nervousness, anxiety, worry, embarrassment, and stress.  I have also seen my family suffer from my emotional state.
>
> *Smith v. JVE Collections, Inc.*, U.S. District Court, Southern District of California, 01-CV-938-L (CGA).

In the Northern District of California case of *Panahiasl, et al. v. Gurney, et als.*, the Court

awarded $65,000 in compensatory and statutory damages, in addition to attorney's fees and

costs, based on declarations attesting to the emotional distress suffered as a result of the debt

collector's continuous phone calls to the workplace. 2007 U.S. Dist. Lexis 17269, 2007 WL

738642 (N.D. Cal 2007).

In a California Superior Court case, a jury awarded $175,000 to a couple subjected to

abusive debt collection practices. *Castillo v. Americash and Fairbanks, et al.*, BC279021,

Superior Court of Los Angeles County, (September 30, 2003), Verdict Search, November 24,

2003.

In a Texas state court case, a jury awarded $50,000 in compensatory damages for

emotional distress and $1,500,000 in punitive damages on a co-pending common law invasion of

privacy claim to a consumer who had received eight voicemail messages containing obscene and

racially offensive language from a debt collector.  *Jones v. Advanced Call Center Technologies*,

Case # DC-08-02034.  Verdict Search, May 28, 2010.

In a Southern District of Texas case, a jury awarded $40,000 in actual damages (trebled

to $120,000 under the Texas state debt collection statute) and $1,000 in statutory damages

against a debt collector alleged to have contacted her at work after being instructed not to do so,

calling her a "liar", and causing Plaintiff to experience anxiety attacks as a result of its collection

calls. *Guajardo v. GC Services, LP,* Civil No. 4:08-cv-119 (S.D. TX  2010)

In a Northern District of California case, a jury awarded $50,000 to each of two Plaintiffs

and assessed $400,000 in punitive damages against a debt collector alleged to have attempted to

collect a debt in excess of 10 years old, threatened immediate suit on a time-barred debt, and to

report the debt to the credit reporting agencies.  Plaintiffs alleged emotional distress, consisting

of fear, anxiety, stress, shaking, crying, depression, marital instability, insomnia and

embarrassment as a result of the calls.  *Fausto v. Credigy Services Corporation, et als.*, Civil No.

5:07-cv-5658 (N.D. Cal. 2009).

With the exception of a handful of outlying verdicts in which the Plaintiff was only

awarded $1,000 in statutory damages (presumably failing to demonstrate entitlement to

compensatory damages at all), or an unusual fact pattern on the other end of the spectrum where

the debt collector physically traumatized the Plaintiff's children (by illegally repossessing a

vehicle in which Plaintiff's children were secured and driving away with them), resulting in an

award of nearly a million dollars, these closely clustered verdicts listed above represent the

universe of known verdicts involving an award of emotional distress damages proximately

caused by abusive debt collection activity. [1]

Thus, the mid point of these verdicts support Plaintiff's request for judgment in the

amount of $60,000 as to the Defendants, jointly and severally as for his actual damages award.

Plaintiff also seeks $2,000 in statutory damages as provided for by the federal and California

statutes.  Plaintiff has endured the Defendants' collection efforts directed at him since December

of 2009.  These efforts have continued, notwithstanding the actual knowledge by the Defendants

---

[1] Counsel has reviewed the entirety of the verdicts available through the "Verdict Search" publication
(www.verdictsearch.com), has researched the same via other information sources such as Westlaw, and has
consulted numerous other consumer attorneys around the country in reaching this conclusion.

that Plaintiff was, is, and continues to be represented by counsel and that he refuses to pay the

amount they have attempted to extort from him.  The Court should note that these efforts

directed at the Plaintiff remain ongoing.  The threats made in these calls and letters have caused

actual damages to the Plaintiff, as detailed in his Declaration, and support his requested

combined actual and statutory damages award of $62,000.   Plaintiff also seeks an award of

attorneys fees and costs in the amount of $13,143.91, supported by the declaration of his counsel,

Matthew Erausquin, attached hereto as Exhibit B.   The hourly rates sought with regard to the

work performed by Plaintiff's counsel are those approved by this Court in the *Williams v. Lexis-*

*Nexis* matter for both Mr. Bennett and Mr. Erausquin in 2008.  In the context of more recent

opinions addressing the appropriate hourly rate for consumer law practitioners in the Eastern

District of Virginia, these rates are reasonable.  (Report and Recommendation at 13-15, *Randle v.*

*H&P Capital Inc.*, Civil No. 3:09-cv-608, July 21, 2010) (analyzing the appropriate hourly rates

of various practitioners in the Eastern District of Virginia, including Mr. Bennett's); (Mem. Op.

at 17, *Reynolds v. Reliable Transmissions, Inc.,* Civil No. 3:09-cv-238, June 29, 2010) (finding

Mr. Bennett's rate of $450/hr to be reasonable and appropriate).  The Court might also note that

these rates are consistent with FDCPA defense rates charged by the McGuire Woods firm for

representation as far back as April of 2006.  ("Engagement Letter", Exhibit E).  Accordingly, the

entirety of the award sought is as follows:

| | |
|---|---|
| Non-economic damages attributable to emotional distress, accompanying headaches and stomach disorders: | <u>$ 60,000.00</u> |
| **Subtotal Sought for Actual Damages:** | **$ 60,000.00** |
| Statutory damages pursuant to 15 U.S.C. §1692k: | $ 1,000.00 |
| Statutory damages pursuant to Cal. Civil Code §1788.30: | <u>$ 1,000.00</u> |

| | |
|---|---|
| **Subtotal Sought for Statutory Damages:** | **$ 2,000.00** |

Attorney's Fees:

| | |
|---|---|
| Leonard A. Bennett - 2.75 hrs @ $450/hr: | $ 1,237.50 |
| Matthew J. Erausquin - 28.50 hrs** @ $350/hr: | $ 9,975.00 |
| Paralegal Support - 8.50 hrs @ $110/hr: | $    935.00 |
| | **$ 12,147.50** |

Costs:

| | |
|---|---|
| Filing and court fees | $   350.00 |
| Service fees | $   153.00 |
| Postage and delivery | $   144.41 |
| Verdict Search Research | $   349.00 |
| | **$   996.41** |

| | |
|---|---|
| **Subtotal Sought for Attorneys Fees and Costs:** | **$ 13,143.91** |
| **Total Judgment Amount Sought:** | **$75,143.91** |

*** Includes 5 hours anticipated for enforcement of judgment*

## CONCLUSION

Therefore, the Plaintiff respectfully moves this Court for entry of default judgment pursuant to F.R.C.P. §55(b)(2) and prays that the Court award judgment against Defendants Regent and Carruthers, jointly and severally, in the amount of $60,000.00 as for compensatory damages, $1,000.00 as for statutory damages pursuant to the Fair Debt Collection Practices Act, $1,000.00 as for statutory damages pursuant to the California Rosenthal Fair Debt Collection Practices Act, and attorney's fees and costs in the amount of $13,143.91.

Respectfully submitted,
**ROBERT CLARKE**

By:_____/s/_____
Of Counsel

MATTHEW J. ERAUSQUIN, VSB#65434
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.

1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Tel:    703-273-7770
Fax:    888-892-3512
matt@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of August, 2010, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system.


And I hereby certify that I will mail the document to the following non-filing users:

Regent Asset Management Solutions, Inc.
7290 Samuel Drive, Suite 300
Denver Colorado 80221

D. Scott Carruthers and Associates, LLC
8448 Katella Avenue
Stanton, CA 90680


_____/s/_____
Matthew J. Erausquin, VSB#65434
Counsel for the Plaintiff
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Tel:    703-273-7770
Fax:    888-892-3512
matt@clalegal.com
